IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REVEREND WESLEY CRAWFORD, SHONTELLE HOLSOME CRAWFORD, and PRECIOUS RECHELLE LEWIS,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>KERN COUNTY COUNTY SCHOOL DISTRICT BOARD OF TRUSTEES, DONALD CARTER, KERN HIGH SCHOOL DISTRICT, SUPERINTENDANT, and DEAN MCGREE, KERN HIGH SCHOOL DISTRICT, WEST HIGH SCHOOL PRINCIPAL,<br><br>　　　　Defendants. | Case No. 1:10-cv-00425 OWW JLT<br><br>FINDINGS AND RECOMMENDATIONS DENYING PLAINTIFFS' MOTIONS TO PROCEED IN FORMA PAUPERIS AND ORDERING THE COMPLAINT TO BE DISMISSED WITH LEAVE TO AMEND<br><br>(Docs. 6, 8) |

　　　　On March 10, 2010, each plaintiff filed a motion to proceed in forma pauperis ("IFP"). (Docs 2, 3, 4) On March 31, 2010, the Court ordered each plaintiff to file amended motions to proceed in forma pauperis because each was incomplete for various reasons that made it impossible for the Court to determine the motions. On April 9, 2010, each of the plaintiffs filed amended motions. (Docs 6, 7, 8)

　　　　Under 28 USC § 1915(e)(2), the Court is obligated to deny the motion to proceed IFP if the allegation of poverty is untrue or the action is frivolous or malicious, it fails to state a claim

upon which relief may be granted or seeks monetary relief against a defendant who is immune. For the reasons set forth below, the Court recommends that the motions to proceed IFP be DENIED and the complaint be DISMISSED WITH LEAVE TO AMEND.

## I.       Motions to proceed IFP

All parties instituting any civil action, suit or proceeding in a United States District Court must pay a filing fee. See 28 U.S.C. § 1914(a). An action may proceed despite a plaintiff's failure to prepay the fee only if the plaintiff is granted leave to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). See Rodriguez v. Cook, 169 F.3d 1176, 1177 (9th Cir. 1999).

To prevail on this motion, Plaintiffs need not demonstrate that they are completely destitute but they must show that, because of their poverty, they cannot pay the filing fee and still provide their dependents with the necessities of life. Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339-40 (1948).  A "showing of something more than mere hardship must be made." Martin v. Gulf States Utilities Co., 221 F.Supp. 757, 759 (W.D. LA 1963).

This Court has broad discretion to grant or deny Plaintiff's motion. O'Loughlin v. Doe, 920 F.2d 614, 616 (9th Cir. 1990).  "[P]ermission to proceed in forma pauperis is itself a matter of privilege and not right; denial of in forma pauperis status does not violate the applicant's right to due process." Franklin v. Murphy, 745 F.2d 1221, 1231 (9th Cir. 1984) (citation omitted). "The trial court must be careful to avoid construing the statute so narrowly that a litigant is presented with a Hobson's choice between eschewing a potentially meritorious claim or foregoing life's plain necessities. [Citations]. But, the same even-handed care must be employed to assure that federal funds are not squandered to underwrite, at public expense, either frivolous claims or the remonstrances of a suitor who is financially able, in whole or in material part, to pull his own oar. Temple v. Ellerthorpe, 586 F. Supp. 848, 850 (D.R.I. 1984) (citation omitted).

### A.      The application to proceed IFP by plaintiff Lewis should be denied due to her failure to comply with the Court's order

Ms. Lewis filed her initial motion to proceed IFP on March 10, 2010. (Doc 3) Because it was incomplete, the Court ordered her to file an amended application. (Doc 5) Ms. Lewis

complied with this order and filed her amended application on April 9, 2010. (Doc 7) The application continued to be incomplete because it failed to provide information about the amount of income that she receives for her children. As a result, the Court, once again, ordered Ms. Lewis to file an amended application that provided this information. (Doc 9) She was given ten days, or until April 26, 2010, to file her amended application to proceed in forma pauperis. Id. In the order, the Court warned Ms. Lewis that "failure to comply with this order may result in denial of her amended motion to proceed in forma pauperis." Id. Despite the passage of the filing deadline, Ms. Lewis has failed to file an amended motion. Therefore, the Court recommends that Ms. Lewis' motion to proceed IFP be DENIED.

### B. The applications to proceed IFP by the Crawford plaintiffs should be denied because their income is sufficient to allow them to pay the filing fee

Rev. and Mrs. Crawford each filed amended applications on April 9, 2010. (Docs 6, 8) When considering these motions together, it appears that the family of five, receives $4,298 per month.[1,2] (Docs 6, 8) This calculates to an annual income of over $51,000.

The Court recognizes that $2,650 per month is received by the couple to assist in the care of their adult son, who suffers from severe physical and mental impairments. However, the Crawfords attest that they do not receive public benefits for their other two children because the income received for their adult son "is counted as actual income" to the family by the County of Kern when calculating the public benefits to which the family is entitled. Notwithstanding the

---

[1] The Court is mindful that each application to proceed in forma pauperis must be considered independently. Adkins v. E.I. Du Pont De Nemours & Co., Inc., 335 U.S. 331, 340 (1948). The Court is equally mindful that plaintiffs are charged with income to which they have access, such as their spouse's income or other household income, when determining applications to proceed in forma pauperis. United States v. Marty, 2010 U.S. Dist. LEXIS 2783 (E.D. Cal. 2010) citing Monti v. McKeon, 600 F.Supp. 112, 114 (D. Conn. 1984) ("in ruling on motions to proceed *in forma pauperis*, . . . courts have considered the income of interested persons, such as spouses and parents, in evaluating the funds available to the movant . . . If plaintiff is supported by her spouse, and her spouse is financially able to pay the costs of this appeal, it follows that the plaintiff's own lack of funds will not prevent her from gaining access to the courts.")

[2] Although each application indicates that each plaintiff receives $504 per month in SSI benefits, the attached letters from the SSA indicate that each receives $574.85 per month.

opinion of Kern Regional Center as to the significance of this sum to the family's income, the County of Kern, who has been charged with the responsibility of evaluating income for purposes of allocating governmental financial assistance, has determined that this money is, indeed, family income. Based thereon, the Court concludes that this amount *is* income to the family and is properly considered here.³ Therefore, the Court finds that the family income is sufficient to allow the Crawford Plaintiffs to pay the filing fee in this case without causing them to forgo the necessities of life. Consequently, the Court recommends that motion to proceed IFP filed by Rev. and Mrs. Crawford be DENIED.

**II.     All of the applications to proceed IFP should be denied because the complaint fails to state a claim**

The Court is required to deny an application to proceed IFP when the complaint fails to state a claim. 28 USC § 1915(e)(2). For the reasons set forth below, the Court finds that the Plaintiffs' complaint fails to comply with the requirements of Rule 8 and fails to state a claim. As a result, this forms an alternate basis to deny the applications to proceed IFP. Although the Court concludes that the complaint should be dismissed, it recommends that leave to amend be granted. Lopez v. Smith, 203 F.3d 1122, 1127-1128 (9th Cir. 2000) (en banc).

**A.     Analysis**

**1.     The Parties**

**a.     The Plaintiffs cannot raise class-related claims**

The named plaintiffs are Wesley and Shontelle Crawford and Precious Lewis. Within the body of the complaint, the plaintiffs seem to assert that they bring the action on behalf of their minor children. (Doc 1 at 3) However, later in the complaint, it appears that the Plaintiffs, purports to bring the action "on behalf of all other African American/Black parents similarly situated" and the complaint specifically indicates that this is done according to Fed. R. Civ. P.

---

³Moreover, it appears that the Crawfords have failed to account for the public benefits received by their adult son, part of which *must* be earmarked to pay for his housing, food and other personal necessities. Because the son lives with the Crawfords, this money should be included as income because it assists them in paying their mortgage and other household expenses.

23. Id. Notably, the Plaintiffs assert that they "can adequately represent the interests of the class." Id.

To the contrary, none of the Plaintiffs could be an adequate class representative in this situation because none is an attorney. Although each Plaintiff may appear and represent himself/herself pro se (28 U.S.C. § 1654), as they are doing here, this privilege is personal to each plaintiff. No pro se plaintiff has the authority to appear as an attorney for the others. Russell v. United States, 308 F.2d 78, 79 (9th Cir. 1962); McShane v. United States, 366 F.2d 286, 288 (9th Cir. 1966) (lay person lacks authority to appear as an attorney for others). Therefore, Court recommends that the class-related claims be dismissed.

      **b.    Because the Plaintiffs have not sought formal appointment of as guardians ad litem and because the children are not represented by counsel, the claims raised on their behalf should be dismissed**

As noted above, in the complaint, the named Plaintiffs indicate that they are suing on behalf of their children and/or their wards. (Doc 1 at 3) They do not allege the names of the children on whose behalf the litigation is initiated and have not sought formal appointment as the children's guardians ad litem. Federal Rule of Civil Procedure 17(c)(2) provides that a minor may sue through a guardian ad litem or by next friend, but a court must formally appoint the guardian ad litem to protect the unrepresented minor. See Watson v. County of Santa Clara, 468 F. Supp. 2d 1150, 1155 (N.D. Cal. 2007) (dismissing without prejudice actions brought by plaintiff minors because no guardian ad litem was formally appointed by the court).

On the other hand, even assuming that this occurs, it is settled that after a court appoints a guardian ad litem or next friend to represent the child, the guardian ad litem must retain a lawyer, because the non-lawyer guardian may not appear as an attorney for anyone other than himself. See Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997). In Johns, the Court determined that claims brought on behalf of a child must be dismissed without prejudice if the

1 guardian refuses to hire a lawyer. Id. This is to preserve the child's ability to prosecute his
2 claims himself when he achieves the age of majority. Id. Therefore, the Court recommends that
3 the claims brought on behalf of the children be dismissed pending the appointment of a guardian
4 ad litem and the hiring of an attorney.

        **c.**        **The Court cannot determine the injury that the Plaintiffs claim they suffered as a result of the alleged discriminatory action**

7         To the extent that the injury alleged in the complaint relates to the inferior education the
8 children are receiving as a result of the discriminatory practices alleged to be practiced by KHSD,
9 the complaint fails to identify any injury that the adult Plaintiffs have suffered. Although they
10 allege that "parents" are prevented from having unfettered access to school meetings and to the
11 classroom, they do not allege that they have been so prevented. Moreover, they fail to identify
12 the federal or state law that permits parents to attend classroom sessions or principals' meetings
13 at their will or that would support an action under 42 USC § 1938.[4] Thus, the Court recommends
14 that the complaint as to the named Plaintiffs be dismissed with leave to amend.

15         **b.**        **The Defendants**

16         The complaint names in the caption, the "Kern High School District Board of Trustee"
17 [sic], Donald Carter who is the Superintendent of the Kern High School District and Dean
18 McGree (also referred to as Dean McGee) who is the principal of West High School. However,
19 in the body of the complaint, it appears that the Plaintiffs also seek to name the Kern High
20 School District as well as the individual members of the "Kern High School District County
21 School Board and "the Superintendent of the Kern County public school." (Doc 1 at 3-4) The
22 Court cannot determine whether Plaintiffs intend to name the "Kern County Superintendent of
23 Schools" in addition to the Superintendent of the Kern High School District or if this reference is
24 merely redundant.

---

[4]The complaint cites the program entitled "No Child Left Behind" but fails to cite to any portion of it or any federal law that has been violated by the alleged action.

Moreover, the complaint fails to clearly state the action taken by each named defendant that would constitute a violation of federal law or the United States Constitution. Therefore, the Court recommends that the complaint be dismissed due to the uncertainty as to who the Plaintiffs intend to name as defendants.

### 1.  Summary of the Allegations

The complaint is largely unintelligible. It is written in a "stream-of-consciousness" style, repeats some information many times, is replete with conclusions and few facts and joins words together that seemingly are unrelated such to create sentences that are nonsensical. Although the Court can make out the gist of the complaint, the manner in which the complaint is plead makes it impossible for the Court to understand the full breadth of Plaintiffs' complaints. It appears to the Court that the primary thrust of the complaint is that the Plaintiffs' contend that racial discrimination is practiced by KHSD in a variety of ways. This conclusion is based upon the summary of allegations set forth below, which represents the Court's best attempt to understand and outline the Plaintiffs' positions.

The Plaintiffs allege that they have children who attend a high school within the Kern High School District ("KHSD"). (Doc 1 at 6.) They seem to assert that KHSD maintains a custom and policy of discrimination in which some Black parents are prohibited from attending meetings held by the high school's principal and from having unfettered access to the classroom to observe the teacher-student interaction. Id. at 2. They assert also that KHSD personnel are assigned to the various schools within the district based upon their "race and color status or political affiliation." Id.

The complaint seems to claim that the schools within the KHSD, namely West High, fail to have a "totally" racially diverse student body and they seem to assert that this is due to segregation efforts of the Defendants. (Doc 1 at 4-5, 6) In particular, Plaintiffs seem to allege that the "white" high schools of KHSD are staffed by "white" personnel while the "Black" high

schools are staffed by "Black" personnel.[5] Id. at 5.

Plaintiffs assert that the KHSD has a policy related to students traveling "to confession or college" and that this policy is not applied equally to black and white students. (Doc 1 at 5) Exactly what this policy is or the subject matter to which it pertains is not clear nor is it clear whether Plaintiffs' children have suffered under this policy or, if so, how. Plaintiffs assert also that KHSD has a policy related to fundraising that is applied differently to Black students such to "deny African American/Black or Negro students or their parents equal protection under the law." Id. Again, Plaintiffs fail to explain what this policy is or how it promotes or suppresses students' interests. Likewise, they fail to explain how a fundraising policy of KHSD denies them a federally protected constitutional right. Finally, Plaintiffs claim that KHSD fails to select "textbooks that are diverse or suspension and expulsions." Id. The Court cannot make full sense of Plaintiffs' allegation but presumes that they are dissatisfied with the textbooks chosen because they contend that the selection process favors non-diversity. Plaintiffs may also be claiming that student punishment is not imposed on students equally based upon their races but, given the ambiguity of the allegations, the Court cannot be certain.

Plaintiffs identify other policies of KHSD as unlawful. In particular, they note that although black and white students ride the same school buses, "but the staff does not reflect racial diversity." (Doc 1 at 9.) The Court presumes by this that Plaintiffs are asserting that the most of bus drivers are of a certain, unidentified race. However, Plaintiffs fail to explain how they have standing to raise this issue because they fail to demonstrate how this causes them damages, as opposed to the students. Plaintiffs also claim that KHSD expenditures are determined according to "race or color" but exactly what the Plaintiffs mean by this alelgation is unclear. Id. Finally, they reiterate that KHSD personnel are segregated by race. Id.

Plaintiffs claim that these policies are responsible for causing a "psychological effect" on

---

[5]However, the vagueness, ambiguity and unintelligibility of the complaint make this uncertain because later in the complaint the Plaintiffs seem to seek an order requiring development of policies that would require hiring Black professional staff. (Doc 1 at 11-12)

1  black students such that these pupils drop out of school.  These drop-outs, in turn, pose a risk of
2  "friction or disorder among pupils or others, and the possibility of breaches of the peace or ill
3  will or economic retaliation within the community." Id. at 5-6.  Plaintiffs allege that KHSD has a
4  black student population of only 7% but that, of these students, 68% of black students are
5  expelled and 49% of the males drop out and that this population has the lowest test scores in
6  English, Math and Science.  Id. at 7. Plaintiffs allege that these statistics have remained static
7  over the last 19 years. Id.   Plaintiffs contend that KHSD discriminatory practices cause "a High
8  teenage pregnancy rate and high incarceration" within the black student population.  Despite
9  these statistics, Plaintiffs fail to allege that any of these actions have occurred to them or, even, to
10 their children.

11     Plaintiffs allege that defendant McGee demonstrates "racial and segregated biases,
12 custom, policy practice and procedures on African/American/Black or Negro students and or
13 parents.  (Doc. 1 at 7.) How he is alleged to do this is not described.  Plaintiffs allege that they
14 have sent letters for 19 years to the various Superintendents of KHSD but they have "not created
15 real policies, Practices and procedures to change the racial and segregated customs." Id. The
16 Plaintiffs contend that their calls for diversity have been ignored because of their "race or color"
17 and that this causes black students to continue to have to attend inferior schools with inferior
18 curriculum, programs, services and opportunities.

19     In their complaint, the Plaintiffs seek "preliminary and permanent injunction" to prevent
20 KHSD from; 1. prohibiting parents from attending "school administrator meeting [sic]" which
21 are held at the school and include participation by the principal, 2. prohibiting parents from
22 attending classes to observe teachers, 3. continuing to refuse to diversify professional staff;
23 continuing to enforce discipline on students based upon their race, 4. continuing to spend funds
24 in a way that perpetuates segregation, and, 5. maintaining racial segregated in the schools and in

extra-curricular activities.[6]  Plaintiffs request that, as a result of injunctive relief, by the end of the 2011 school year, the school reflect "complete desegregation"

### 2.   The Complaint is vague

#### a.   The requirements of Rule 8(a)

The Federal Rules of Civil Procedure adopt a flexible pleading policy.  Nevertheless, a complaint must give fair notice and state the elements of the plaintiff's claim plainly and succinctly.  <u>Jones v. Community Redevelopment Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984).  In other words, the plaintiff is required to give the defendants fair notice of what constitutes the plaintiff's claim and the grounds upon which it rests.  Section 1983 complaints are governed by the notice pleading standard in Federal Rule of Civil Procedure 8(a), which provides in relevant part that:

> A pleading that states a claim for relief must contain:
>
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949, (2009), the Court observed,

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. [Citations]. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Citation].  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." [Citation].

The Court further clarified that,

> a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial

---

[6]Plaintiffs seems to request other injunctive relief but the Court cannot discern the Plaintiffs' meaning.

   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. The Court instructed, "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1950. However, the conclusions contained in the pleading "are not entitled to the assumption of truth." Id.

   As noted above, the complaint is very difficult to follow and it seems to vary back-and-forth between seeking relief for the adults, despite the claim that the action was brought on behalf of the children, and alleging damages incurred by the students. Even still, the complaint fails to identify any adverse action that the unnamed children of the Plaintiffs have suffered.

   Likewise, despite the dictates of the Supreme Court in Iqbal, the complaint provides few facts but, instead, is replete with conclusions. For example, the complaint asserts that Black students drop out of school at a higher rate than others and concludes that this is due to the failure of KHSD to provide a racially integrated staff. (Doc. 1 at 7) However, there are no facts plead that would support this conclusion.

   Finally, the complaint is so vague and ambiguous and contains so many passages that are unintelligible, that the Court cannot fully determine the matters about which the plaintiffs complain. For example, the complaint alleges that racial segregation has occurred at KHSD but the complaint suggests that this was based upon a "(parent or parents) basis." Exactly what this means is not clear. (Doc. 1 at 3.) This unexplained theme is reprised when the complaint reads,

> Notwithstanding that the criteria used by the Defendants have been administered in a way to maintain segregation, of teenage students, who have complied or stand ready to comply with administrative racial and segregation biases custom, policy, procedure practice in suspension and expulsions, classroom instruction, treatment athletic programs that are promulgated by Defendants which are applied to African American/Black or Negro students are not applied to with parents or students therefore it is based on race or color:

1 <u>Id.</u>  Again, the Court is at a loss to determine the meaning of this allegation and cannot discern
2 whether the Plaintiffs are referring to an injury done to them, to their children or to other
3 students.  Likewise, the complaint refers to various policies held by KHSD but fails to explain
4 what they are, the topics they address or how they apply to KHSD students and/or their parents.
5 For these reasons, the complaint fails to meet the requirements of Rule 8 and the Court
6 recommends that the complaint be dismissed with leave to amend.

        **b.**      **Section 1983 claims**

8        Plaintiff's complaint seeks damages under 42 U.S.C. § 1983, which provides in pertinent
9 part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

14 42 U.S.C. § 1983.
15        To plead a § 1983 violation, the plaintiff must allege facts from which it may be inferred
16 that (1) plaintiff was deprived of a federal right, and (2) the person who deprived plaintiff of that
17 right acted under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Collins v.</u>
18 <u>Womancare</u>, 878 F. 2d 1145, 1147 (9th Cir. 1989).  To warrant relief under § 1983, the plaintiff
19 must allege and show that the defendants' acts or omissions caused the deprivation of the
20 plaintiff's constitutionally protected rights.  <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1993).
21 "A person deprives another of a constitutional right, within the meaning of section 1983, if he
22 does an affirmative act, participates in another's affirmative acts, or omits to perform an act
23 which he is legally required to do that causes the deprivation of which [the plaintiff complains]."
24 <u>Id.</u>  There must be an actual causal connection or link between the actions of each defendant and
25 the deprivation alleged to have been suffered by the plaintiff.  See <u>Monell v. Department of</u>
26 <u>Social Services</u>, 436 U.S. 658, 691-692 (1978)(citing <u>Rizzo v. Goode</u>, 432 U.S. 362, 370-371, 96

S. Ct. 598 (1976)).

Despite the pleading requirement of 42 USC § 1983, Plaintiffs have failed to outline how each named defendant acted to cause alleged damages. Moreover, Plaintiffs have failed to identify facts that would support the conclusion that they have suffered a deprivation of federal rights guaranteed by the Constitution or other federal law. Thus, because the Plaintiffs have failed to state a claim under 42 USC § 1983, the Court recommends that the complaint be dismissed without leave to amend.

### i.     Claims under the Thirteenth Amendment

The Thirteenth Amendment to the United States Constitution reads, "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." Involuntary servitude requires compulsion of services by the use or threatened use of physical or legal coercion. See United States v. Kozminski, 487 U.S. 931, 953 (1988).

The Plaintiffs make no factual allegations in their complaint that would support a claim under the Thirteenth Amendment. Therefore, the Court recommends that these claims be dismissed.

### ii.    Claims under the Fifteenth Amendment

The Fifteenth Amendment ensures that neither the state nor federal governments abridge the rights of all citizens to vote "on account of race, color, or previous condition of servitude." U.S. Const. amend. XV, § 1. The Plaintiffs make no factual allegations in their complaint that would support a claim under the Fifteenth Amendment. Therefore, the Court recommends that these claims be dismissed.

### iii.   Claims under the Fourteenth Amendment

The Equal Protection Clause of the Fourteenth Amendment prohibits disparate treatment of similarly situated people. The Equal Protection Clause provides a basis upon which to raise racially discriminatory treatment, including claims of racial segregation in schools. "To succeed

on a § 1983 equal protection claim, the plaintiffs must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional." <u>Reese v. Jefferson School Dist. No. 14J</u>, 208 F.3d 736, 740 (9th Cir. 2000).

First, as noted above, the Plaintiffs cannot bring this action on behalf of their children unless they seek and are granted formal permission to do so and then they must retain an attorney to represent the guardians ad litem.  Second, although they refer to racial segregation occurring at KHSD schools, they fail to allege any damage suffered by any of their own children.  In fact, although the Court surmises that children of the Plaintiffs currently attend a school within the KHSD, the complaint in this regard is vague.  The complaint alleges that in 2006 and 2008, the Plaintiff enrolled their children at West High School. (Doc. 1 at 3.)  However, then the complaint equivocates when it reads, "Plaintiff adolescence Children and grand presently are enrolled in West High School within the Kern High School District or are eligible to attend the Kern High School District school system."  <u>Id.</u>

Third, although the Plaintiffs allege that the racial makeup in schools within the KHSD indicate that segregation has and is occurring, they do not allege that their children attend such a school. Given these ambiguities, it is not clear whether any of the children of the Plaintiffs have suffered racial discrimination such to convey standing upon them to bring this action.

Fourth, assuming that the Fourteenth Amendment claims are raised on behalf of the Plaintiffs, rather than the students, there are few factual allegations that would demonstrate that they have suffered racial discrimination at the hands of the defendants.  Although the complaint alleges that one of the plaintiffs has been prevented from attending "school principal administered meeting [sic], access to classroom at any time to observed [sic] teacher and interaction with students, in the Kern High School District County public school, State of California, solely because of their [sic] race or color or status or political affiliation," this is a mere conclusion that is unsupported by any factual support.  The complaint does not demonstrate that non-Black parents are allowed to attend these same meetings or that they have unfettered

access to classrooms.  There are no allegations that two of the three plaintiffs have suffered similarly.[7] Therefore, because the complaint fails to demonstrate that the defendants acted in a discriminatory manner toward the plaintiffs or that they intended to do so, the complaint fails to state a claim under the Fourteenth Amendment.

    c.  **Section 1981 claims**

  Section 1981 provides, in pertinent part, that all persons shall have the same right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. Section 1981 is not, however, "a general proscription of racial discrimination… it expressly prohibits discrimination only in the making and enforcement of contracts." Peterson v. State of California Dept. Of Corrections and Rehabilitation, 451 F. Supp. 2d 1092, 1101 (E.D. Cal. 2006), quoting Patterson v. McLean Credit Union, 491 U.S. 164, 176, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989).  In order "to establish a claim under section 1981, a plaintiff must establish that (1) he or she is a member of a racial minority; (2) the defendant intended to discriminate against plaintiff on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and enforce contracts, sue and be sued, give evidence, etc.). Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993); see Green v. State Bar of Texas, 27 F.3d 1083, 1086 (5th Cir. 1994).

  The Plaintiffs make no factual allegations in their complaint that would support a claim under 42 USC § 1981.

**III.**  **Conclusion**

  The Plaintiffs have not sought permission to represent the interests of their children and

---

[7]On the other hand, it is possible that the Plaintiffs intend this to mean that each of them have been so prevented.  The complaint indicates that a singular "Plaintiff" has been prevented from attending principal meetings and from having unfettered classroom. (Doc. 1 at 3) However, the same sentence then indicates that was based upon"their" race which implies that they intend this allegation to address all plaintiffs. Id.

have not obtained representation by an attorney. As a result, the claims brought on the children's behalf are improper. Moreover, as Plaintiffs proceeding pro se, they are not permitted to sue on behalf of a class of people.

Although the Plaintiffs seem to wish to allege that the defendants are acting in a discriminatory manner, the complaint fails to make clear who the plaintiffs are and what unique injuries each has suffered. The complaint is vague and ambiguous in many other regards also, including the failing to describe and identify the KHSD policies that are at issue, how they are applied, who created them and/or applied them such to cause injury and how the policies and/or actions have caused a deprivation of federal rights. Also, they fail to describe the actions taken by each defendant that caused the injuries. In short, the complaint provides few factual allegations and relies instead on conclusions.

For all of these reasons, the Court recommends that the IFP applications be DENIED and the complaint be DISMISSED WITH LEAVE TO AMEND.

## RECOMMENDATIONS

Accordingly, the Court HEREBY RECOMMENDS that:

1. The applications to proceed in forma pauperis by plaintiffs, Wesley and Shontelle Crawford are DENIED;
2. Plaintiffs, Wesley and Shontelle Crawford, are ORDERED to pay the filing fee at the time they file their First Amended Complaint for Damages *unless* a co-plaintiff files a motion to proceed in forma pauperis at that time;
3. The application to proceed in forma pauperis by plaintiff, Precious Lewis, is DENIED without prejudice;
4. Plaintiff, Precious Lewis, is ORDERED to pay the filing fee **or submit a complete, signed application to proceed *in forma pauperis*** at the time she files her First Amended Complaint for Damages *unless* a co-plaintiff files motion to proceed in forma pauperis;
5. The complaint is DISMISSED WITH LEAVE TO AMEND.

1  This Findings and Recommendations is submitted to the United States District Judge
2  assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the
3  Local Rules of Practice for the United States District Court, Eastern District of California.
4  Within twenty (20) days after being served with a copy, any party may file written objections
5  with the court and serve a copy on all parties.  Such a document should be captioned "Objections
6  to Magistrate Judge's Findings and Recommendations."  The Court will then review the
7  Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that
8  failure to file objections within the specified time may waive the right to appeal the District
9  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **May 12, 2010**                             **/s/ Jennifer L. Thurston**
                                                      UNITED STATES MAGISTRATE JUDGE